[Cite as *Clay v. Clay*, 2022-Ohio-1728.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| JOHNNY B. CLAY, II | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 21CA3944 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| LISA K. CLAY, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

George L. Davis, IV, George L. Davis, III Co., L.L.C., Portsmouth, Ohio, for Appellant.

Lisa K. Clay, Piketon, Ohio, Appellant, pro se.[1]

_____

Smith, P.J.

{¶1} Appellant, Johnny B. Clay, II, appeals the trial court's judgment entry that adopted and confirmed the underlying magistrate's decision which (1) granted Appellee, Lisa K. Clay's, motion to modify child support; (2) recommended that Appellant pay child support for his adult, disabled son; and (3) recommended that the child support order "be on-going until the death of either the child or Mr. Clay." On appeal, Appellant raises a single assignment of error contending that the

---

[1]Lisa K. Clay has not filed a brief and is not participating upon appeal.

trial court erred by ordering him to pay child support. For the reasons that follow, Appellant's sole assignment of error is sustained. Accordingly, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion. Specifically, on remand, the trial court is instructed to hold an evidentiary hearing on the nature and extent of the child's alleged disability, as well as whether as a result of the disability the child is incapable of supporting and maintaining himself.

FACTS

{¶2} The parties herein were married on October 24, 1998, and had one child, a son that was born on July 2, 1997. The marriage was dissolved by decree on October 28, 2008. The dissolution decree incorporated a separation agreement and shared parenting plan which designated both parents as residential parents and provided that no child support should be paid by either party "so long as the Shared Parenting Plan is in effect." The Scioto County Child Support Enforcement Agency conducted an administrative review in May of 2012 and recommended that Appellant begin paying $50.00 per month in child support. The domestic relations court filed an order adopting the administrative adjustment recommendations on May 29, 2012.

{¶3} Subsequently, on September 29, 2015, Appellee filed a motion to modify child support. The memorandum filed in support of the motion alleged that

there had been a change in circumstances since the prior order of child support was made in that Appellant's income had increased and the parties' child was "disabled and a student." However, a judgment entry was filed on January 8, 2016, dismissing the motion to modify child support without prejudice due to Appellee's failure to appear for the scheduled hearing on the motion.

{¶4} Appellee filed a second motion to modify child support on January 27, 2016, alleging the same change in circumstances set forth in the prior motion. A pretrial hearing was held on March 18, 2016, at which time the parties entered into a settlement agreement. Pertinent excerpts from the hearing transcript are set forth in detail below. The handwritten memorandum of agreement drafted by Appellee's counsel provided that Appellant's child support obligation would be increased to $191.54 effective March 1, 2016, and that it would terminate "July 2, 2016 at the emancipation of the child."[2] Because Appellant failed to provide his tax returns, the agreement provided that Appellant had until April 5, 2016, to provide his tax returns and that Appellee would have a right to file a motion for additional support for those three months if the tax returns showed Appellant's income exceeded $20,000.00. The trial court incorporated the parties' agreement into a judgment entry on May 27, 2016, but based upon the tax returns provided by Appellant, the trial court increased the monthly support amount to $430.21 per

---

[2]July 2, 2016 was the parties' son's 19th birthday.

month until July 2, 2016. Neither the handwritten agreement of the parties nor the judgment entry filed by the trial court referenced that the child was disabled. Although there is an absence of evidence in the record regarding how or when the child support obligation stopped, apparently Appellant stopped paying child support after July 2, 2016. There was no express order filed, however, terminating the child support or finding the parties' son to be emancipated.

{¶5} Just over two years later, on August 20, 2018, Appellee filed another motion to modify child support. The motion sought modification of the previous order pursuant to R.C. 3119.86(A)(1)(a) "for the reason that their son is mentally and physically disabled and is incapable of supporting or maintaining himself." More specifically, it was alleged in the memorandum that the parties' child was nine years old at the time of the divorce and that his disabilities were present at that time. Attached to Appellee's motion for modification was her own affidavit stating that the child "was born with cerebral palsy and severe developmental disabilities," and was "completely unable to take care of himself and requires assistance with all daily tasks." Also attached to the motion was a single page judgment entry from the Pike County Probate Court appointing Appellee as the child's guardian and stating that the child was "incompetent by reason of profound/severe mental retardation/developmental disabilities due to cerebral palsy and is therefore incapable of taking proper care of himself and his property, and

that a guardianship is necessary." In response, Appellant filed a motion to dismiss the motion to modify child support. The motion argued that the previous child support order had terminated on July 2, 2016, by agreement of the parties "when the child became emancipated" and that the present motion was barred by the doctrine of res judicata. Appellee opposed the motion to dismiss and filed a memorandum in support on October 15, 2018. Thereafter, Appellant filed a supplemental memorandum in support of his motion to dismiss arguing that the parties' prior agreement was "bargained for and mutually agreed upon," and the "documents denoting the agreement and final judgment * * * should therefore be construed against the drafting party, as required by law."

{¶6} A hearing was held on the motion to dismiss on January 25, 2019.[3] No witnesses testified and no evidence was presented at the hearing. Counsel simply argued the legal merits of the motion to dismiss. Further, Appellant did not stipulate to the child's disability during the hearing. Instead, when the magistrate stated "Gentlemen, just for the record even though we all know it but for the record, this child has cerebral palsy, is that correct[,]" Appellant's counsel stated

---

[3]It appears from the record that the hearing held on January 25, 2019, was on the motion to dismiss only. Another hearing was scheduled to be held on "all pending motions" on February 8, 2019. Because the only other pending motion was the motion for modification of child support, it is presumed that the February 8, 2019 hearing was to determine whether child support should be modified. However, as will be discussed more fully herein, the magistrate's February 7, 2019 order denying the motion to dismiss also determined that Appellant had a continuing duty to pay child support and stated that the scheduled February 8, 2019 hearing would "determine the amount of child support." The February 8, 2019 hearing did not go forward due to Appellant filing objections to the February 7, 2019 order.

"I would argue that's an issue for the next hearing.  * * * Whether or not there's a disability, the extent of it, so on and so forth."  The court took the matter under advisement.  The magistrate then issued a decision and entry on February 7, 2019, finding that in light of the fact that the child had cerebral palsy, "it is likely the child will not emancipate in that he will never be self-sufficient and able to care for himself."  The magistrate found that "this child has not and will not emancipate based upon his mental and physical condition[,]" and further found that Appellant "has a continuing duty to support this child."

{¶7} In response, Appellant requested a copy of the hearing transcript and filed a request for findings of fact and conclusions of law.  He also filed objections to the magistrate's decision and a motion for leave to supplement his objections once the transcripts were prepared.  The Domestic Relations Court judge filed a judgment entry on February 22, 2019, stating that the prior magistrate's decision was not intended to be a decision under Ohio Rule of Civil Procedure 53(D)(3)(ii) and because it was a non-final order, there could be no request for findings of fact and conclusions of law.  The court did, however, permit Appellant to file supplemental objections to the magistrate's decision, which Appellant filed on March 14, 2019.  In addition to his other arguments, Appellant argued in his objections that "the Magistrate bypassed proper fact finding and taking of evidence when she improperly found facts during the hearing on Mr. Clay's Motion to

Dismiss despite it not being an evidentiary hearing, but rather oral argument on the motion." Appellant further argued that the magistrate's decision "went beyond the point of inquiry necessary for [his] Motion to Dismiss" and instead made "a determination that their son is indeed disabled" and essentially modified the next scheduled hearing to the simple computation of child support. Appellant requested that the matter be dismissed based upon the grounds of res judicata, or alternatively that the Court "vacate the Magistrate's findings regarding his duty to support the child and finding that their son is disabled." The trial court ultimately filed a judgment entry denying Appellant's objections, finding they were not ripe for review because the matter had "yet to be heard to conclusion by the Magistrate."

{¶8} Appellant filed a notice of appeal from that judgment entry, which was dismissed by this Court for lack of a final appealable order. Thereafter, the matter proceeded to a final hearing on the computation of child support on August 20, 2020. A magistrate's decision and judgment entry was filed on September 29, 2020, which included findings of fact and conclusions of law. The magistrate found the child "was born with severe cerebral palsy and severe developmental disabilities" and ordered that Appellant "pay child support for his adult handicapped child" and that the "child support shall be on-going until the death of either the child or [Appellant]."

{¶9} Appellant once again filed objections and supplemental objections to the magistrate's decision. The trial court issued a judgment entry on March 12, 2021, overruling Appellant's objections and adopting and confirming the magistrate's decision. It is from this judgment entry that Appellant now brings his timely appeal, setting forth a single assignment of error for our review.

### ASSIGNMENT OF ERROR

I.   THE TRIAL COURT ERRED BY ORDERING THE APPELLANT TO PAY CHILD SUPPORT.

{¶10} In his sole assignment of error, Appellant contends that the trial court erred by ordering him to pay child support. Appellant argues that the doctrine of res judicata should have been applied "to prevent re-imposition" of his child support obligation. More specifically, Appellant argues that because he and Appellee entered into an agreement in the Spring of 2016 providing that his child support obligation would end on July 2, 2016, the parties' son's 19th birthday, and because the child support obligation was terminated for approximately two years, Appellee was barred by the doctrine of res judicata from seeking a modification or reinstatement of Appellant's child support obligation. For the reasons that follow, we reject Appellant's argument that the trial court erred in failing to apply the doctrine of res judicata to bar Appellee's motion in the underlying proceedings. Nevertheless, we find that the trial court erred in ordering Appellant to pay child

support considering the lack of evidence in the record regarding the nature and extent of the parties' adult son's disability.  Thus, as will be explained more fully below, the judgment of the trial court must be reversed and the matter must be remanded to the trial court for further proceedings consistent with this opinion.

## Modification of Child Support

{¶11} " '[A] trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion.' " *Cummin v. Cummin*, 2015-Ohio-5482, 55 N.E.3d 467, ¶ 8, quoting *Wolfe v. Wolfe*, 10th Dist. Franklin No. 04AP-409, 2005-Ohio-2331, ¶ 7, in turn citing *Woloch v. Foster*, 98 Ohio App.3d 806, 810, 649 N.E.2d 918 (2nd Dist.1994).  *See also Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).  An abuse of discretion "connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  When applying the abuse-of-discretion standard of review, appellate courts must not substitute their judgment for that of the trial courts.  *See In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).  Furthermore, an appellate court must presume that the findings of the trial court are correct because the finder of fact is best able to observe the witnesses and to use those observations

to weigh witness credibility. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77,

81, 461 N.E.2d 1273 (1984). *See also, Mahlerwein v. Mahlerwein,* 160 Ohio

App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 19 (4th Dist.).

Requirement for Change in Circumstances

{¶12} R.C. 3119.022 governs the procedure for awarding and calculating

child support. The statute's overriding concern is to ensure the best interest of the

child for whom support is being awarded. *See Rock v. Cabral*, 67 Ohio St.3d 108,

110, 616 N.E.2d 218 (1993). Further, this Court has observed as follows regarding

the requirement for a change in circumstances in modifying child support:

> When considering a motion to modify child support, R .C.
> 3119.79(A) provides a trial court must compare the existing child
> support obligation to the amount of support that would be
> required to be paid under the child support guideline worksheet.
> If the court determines that the resulting child support obligation
> is ten percent greater or less than the existing child support order,
> the court must find that there is a substantial change of
> circumstances warranting a modification of the child support
> amount. *Id.* The Ohio Supreme Court has held "when the
> amount of child support provided by the noncustodial parent is
> zero, but the Child Support Guidelines clearly establish that the
> noncustodial parent owes support, then that ten percent
> difference is clearly met." *DePalmo v. DePalmo* (1997), 78 Ohio
> St.3d 535, 540, 679 N.E.2d 266.

*McCleese v. Clemons*, 4th Dist. Scioto No. 05CA3016, 2006-Ohio-3011, ¶ 27.

Common Law Duty of Support for Adult Children with Disabilities

{¶13} In *Yost v. Yost*, this Court explained as follows regarding a parent's

duty to support his or her child:

In the absence of statutory authority, a parent's duty to support a child generally ends when the child reaches the age of majority. *Castle v. Castle* (1984), 15 Ohio St.3d 279, 282, 473 N.E.2d 803; *Sexton v. Conley*, Scioto App. No. 01CA2823, 2002-Ohio-6346, ¶ 13. However, in *Castle*, the Ohio Supreme Court created an exception to this general rule when it stated: "The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Castle*, 15 Ohio St.3d 279, 473 N.E.2d 803, paragraph one of the syllabus. The Court also stated, "[i]n the case of mentally or physically disabled children there must exist a duty both morally and legally on parents to support and maintain such children." *Id.* at 283, 473 N.E.2d 803. Thus, in *Castle*, the Ohio Supreme Court created a common law duty for parents to continue supporting their mentally or physically handicapped children.

*Yost v. Yost*, 4th Dist. Scioto No. 02CA2852, 2003-Ohio-3754, ¶ 8.

{¶14} In reaching its decision in *Castle*, the Supreme Court of Ohio reasoned as follows:

In *Davis v. Davis* (1954), 246 Iowa 262, 266, 67 N.W.2d 566, the Iowa Supreme Court stated: " * * * [G]enerally at common law a parent's obligation to support his child ends when the latter becomes of age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for the support ceases." The reasoning of the Iowa Supreme Court is compelling. The duty of parents to provide for the maintenance of their children has been described by Blackstone as a "principle of [the] natural law," "an obligation * * * laid on them not only by nature herself, but by their own proper act, in bringing them into the world: * * * By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be

> supported and preserved." 1 Blackstone's Commentaries (Lewis Ed.1897) 419.
>
> In 2 Kent's Commentaries on American Law (1884) 190, it is stated: "The wants and weaknesses of children render it necessary that some person maintains them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law. * * * The obligation on the part of the parent to maintain the child continues until the latter is in a condition to provide for its own maintenance * * *."

*Castle* at 282-283.

{¶15} Such reasoning led the Court to conclude that "[i]n the case of mentally or physically disabled children there must exist a duty both morally and legally on parents to support and maintain such children." *Id.* at 283.

{¶16} In *Castle*, the parents were divorced in 1977 and a temporary child support order was issued for the parties' 14-year-old daughter. *Id.* at 279. The child was described as being "severely retarded, physically dependent and incapable of any gainful employment." *Id.* The child support obligation was discontinued by court order in 1977 when the child began receiving "Social Security income benefits." *Id.* The child's social security income was thereafter discontinued in 1979 and as a result, a change in circumstances was found and the trial court ordered that child support be restarted. *Id.* at 280. When the child turned 18 on May 11, 1981, the father discontinued the child support payments. *Id.* Then, on December 3, 1981, the father filed a motion requesting that the court

terminate his child support obligation due to the fact that the child had "reached the statutory age of majority." *Id.* Despite the mother's opposition to the motion and evidence in the record indicating the child "will never be able to live by herself due to the special care she requires," the trial court granted the father's motion to terminate the child support. *Id.* On appeal, the decision was reversed in light of the appellate court's finding that there exists "a common-law duty for the continued support of mentally retarded children by their parents after the age of majority." *Id.* A conflict was certified to the Supreme Court of Ohio, which ultimately upheld the decision of the appellate court and expanded the common law duty to extend to not only mentally disabled children that had reached the age of majority, but also to physically disabled children, provided that the child's disability "existed before attaining the age of majority." *Id.* at paragraph one of the syllabus.

{¶17} To date, the Supreme Court of Ohio has not reversed its decision and in fact, as will be discussed more fully below, the legislature has since codified this parental duty of support. The holding in *Castle* has been upheld and applied repeatedly by courts throughout Ohio to overrule arguments that such child support orders either exceed the jurisdiction of domestic relations or juvenile courts, or that such orders are barred by a prior termination of an existing child support order, or that such orders are prevented from being issued to begin with if a child has

already either emancipated age-wise, or reached the age of majority at the time a

divorce is granted between the parents, or at the time an order is initially sought

between non-married parents. *See Bailey v. O'Hare*, 2nd Dist. Montgomery No.

20622, 2006-Ohio-239 (upholding trial court's judgment vacating prior

emancipation order for child who had reached the age of majority, had been

emancipated by court order, but was found to be totally disabled as a result of

neurological problems that resulted from an accident that occurred when the child

was sixteen); *Wiczynski v. Wiczynski*, 6th Dist. Lucas No. L-05-1128, 2006-Ohio-

867 (rejecting argument that the issues of the disabled child's custody and support

were never within the jurisdiction of the domestic relations court because, at the

time the parties filed for divorce, the child was already 18 years old, and applying

the reasoning of *Castle* while noting that the current case involved the "attachment

of jurisdiction" of the domestic relations court over the child, as opposed to the

"continuing jurisdiction" of the domestic relations court, which was at issue in

*Castle*); *In re Palcisco*, 11th Dist. Trumbull No. 2012-T-0031, 2012-Ohio-6134

(relying on *Castle* to reject argument that R.C. 3119.86(A) does not grant a

domestic relations court whose jurisdiction has terminated pursuant to R.C.

3119.86(B) or (C) the ability to claim "power anew" on behalf of an "adult-aged

child who is disabled"); *In re Edgell*, 11th Dist. Lake No. 2009-L-065, 2010-Ohio-

6435 (relying on *Castle* to find trial court could exercise jurisdiction over disabled

adult child despite lack of a prior order during the child's minority, but noting that the father had agreed to be financially responsible for the child prior to the dissolution decree and did not dispute that the child had suffered from a mental disability since age three and would never be self-supporting); *Donohoo v. Donohoo*, 12th Dist. Clermont Nos. CA2011-11-080 and CA2011-11-081, 2012-Ohio-4105 (rejecting argument that the trial court erred in exercising jurisdiction over adult child who was deemed disabled but who was not found incapable of self-support prior to attaining the age of majority). *But see, Geygan v. Geygan*, 2012-Ohio-1965, 973 N.E.2d 276 (10th Dist.) (finding trial court lacked jurisdiction to award custody and order child support for child that had physical and developmental disabilities since birth, reasoning that neither *Castle* nor R.C. 3119.86 applied where the child was over the age of eighteen at the time of the parents' divorce) (declined to be followed by *In re Palcisco* and *Donohoo v. Donohoo, supra*, and *C.S. v. R.S.*, 2021-Ohio-3581, 179 N.E.3d 222 (5th Dist.).

Enactment of R.C. 3119.86

{¶18} On March 22, 2001, the Ohio Legislature essentially codified the holding of *Castle v. Castle* when it enacted R.C. 3119.86, which is entitled "Circumstances requiring duty of support beyond a child's eighteenth birthday." *Yost v. Yost, supra*, at ¶ 10. R.C. 3119.86 provides in pertinent part as follows:

> (A)  Notwithstanding section 3109.01 of the Revised Code, both of the following apply:

(1)     The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:

(a)     The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.

Both *Castle v. Castle* and R.C. 3119.86 were controlling law at the time the parties herein were initially divorced and thus are without question applicable to the case presently before us.

Legal Analysis

{¶19} Here, as set forth above, it was alleged by Appellee below and found by the trial court that the child at issue, who is nearly 25 years old at this point, is disabled by virtue of the fact that he has cerebral palsy and has been so disabled since he was a minor. The trial court further found that, contrary to the prior agreement of the parties, the child never emancipated and will never emancipate, and thus Appellant has a continuing duty to support the child for the duration of the child's life. On appeal, Appellant does not dispute that parents have a duty to support their disabled adult children under both statutory and common law in the State of Ohio. However, Appellant argues that in this particular case his child's right to support was terminated upon his "emancipation," which was his 19th birthday, by agreement of the parties and that Appellee's subsequently-filed

motion for modification of child support actually constituted a motion to reinstate the previously-terminated support order. Appellant further argues that the motion was barred by the doctrine of res judicata and that the trial court erred in failing to apply the doctrine and instead ordering that he resume paying child support for the lifetime of his son. More specifically, he contends that the doctrine should have been applied to prevent the "reimposition" of the child support obligation that the court in this case had previously terminated. In support of his arguments, Appellant references the fact that this Court recently applied the doctrine of res judicata in a case involving an issue relating to parentage, and further argues that the doctrine may be applied in child support proceedings. *See Matter of K.M.C.*, 2021-Ohio-1612, 172 N.E.3d 439 (4th Dist.) and *Petralia v. Petralia*, 11th Dist. Lake No. 2002-L-047, 2003-Ohio-3867.

{¶20} According to the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). This Court has noted as follows regarding the elements of the doctrine of res judicata:

> " ' "The party asserting res judicata must show the following four
> elements: (1) there was a prior valid judgment on the merits; (2)
> the second action involved the same parties as the first action; (3)
> the present action raises claims that were or could have been

litigated in the prior action; and (4) both actions arise out of the
same transaction or occurrence." ' "

*Ross Cty. Bd. of Commrs. v. Roop*, 4th Dist. Ross No. 13CA3369, 2013-Ohio-

5926, ¶ 13, quoting *Cruse v. Finley*, 4th Dist. Lawrence No. 12CA2, 2012-Ohio-

5465, ¶ 14, quoting *PNC Bank v. Richards*, 10th Dist. Franklin No. 11AP-275,

2012-Ohio-1610, ¶ 10, in turn quoting Reasoner v. Columbus, 10th Dist. Franklin

No. 04AP-800, 2005-Ohio-468, ¶ 5.

{¶21} As set forth by Appellant, the application of the doctrine of res

judicata was recently considered by this Court in *Matter of K.M.C.*, *supra*, where

we noted as follows:

> "In Ohio, res judicata encompasses both estoppel by judgment
> and collateral estoppel.  *State ex rel. Kirby v. S.G. Loewendick &
> Sons, Inc.*, 64 Ohio St.3d 433, 437, 596 N.E.2d 460, 463 (1992).
> Estoppel by judgment prevents a party from relitigating the same
> cause of action after a final judgment has been rendered on the
> merits as to that party.  *Krahn v. Kinney*, 43 Ohio St.3d 103, 107,
> 538 N.E.2d 1058, 1062 (1989). Collateral estoppel prevents
> parties or their privies from relitigating facts and issues in a
> subsequent suit that were fully litigated in a previous suit.
> *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923
> (1994)."

*Matter of K.M.C.* at ¶ 18, quoting *Phillips v. Rayburn*, 113 Ohio App. 3d 374, 680

N.E.2d 1279 (4th Dist.1996).

{¶22} "The applicability of res judicata is a question of law that is subject to

de novo review." *Ross Cty. Bd. of Commrs.*, *supra*, at ¶ 14, citing *Althof v. State*,

4th Dist. Gallia No. 04CA16, 2006-Ohio-502, ¶ 13.  Despite the de novo standard

of review, we are mindful that "the application of the principles of res judicata and collateral estoppel is not mandatory in every case." *Smith v. Ohio Edison Co.*, 2015-Ohio-4540, 46 N.E.3d 1103, ¶ 9, citing *Castorr v. Brundage*, 674 F.2d 531, 536 (6th Cir.1982). As pointed out in *Smith*, "[t]he Ohio Supreme Court has recognized 'that res judicata is not a shield to protect the blameworthy.' " *Smith* at ¶ 9, quoting *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001).

{¶23} As argued by Appellant, this Court recently applied the doctrine of res judicata to paternity proceedings, relying on precedent from the Supreme Court of Ohio:

> "The doctrine of res judicata can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111."

*Matter of K.M.C.* at ¶ 18, quoting *In re Gilbraith*, 32 Ohio St.3d 127, 512 N.E.2d 956, syllabus (1987).

{¶24} The Supreme Court of Ohio, however, has made no such explicit pronouncement with respect to the applicability of the doctrine of res judicata to a parent's motion to modify a child support order, or in this case reinstate a child support order, for a disabled adult child that was filed subsequent to a prior agreement between the parents that provided for a specified date that the child support obligation would end.

{¶25} Further, we are mindful that the Supreme Court of Ohio has explained that:

> "The main legal thread which runs throughout the determination of the applicability of res judicata, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense."

*Broz v. Winland*, 68 Ohio St.3d 521, 523, 629 N.E.2d 395 (1994), quoting

*Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200-201, 443

N.E.2d 978, 985 (1983). *See also, Phillips, supra*, at 380 and *Matter of K.M.C.,*

*supra*, at ¶ 20.

{¶26} While it is true that the *Petralia* court applied the doctrine of res

judicata in a child support modification case to prevent the relitigation of the issue

of whether the father was voluntarily underemployed, *Petralia* has since received

some negative criticism, particularly by the Fifth District Court of Appeals. For

instance, in *Kiehborth v. Kiehborth*, 169 Ohio App.3d 308, 2006-Ohio-5529, 862

N.E.2d 863, ¶ 15 (5th Dist. 2006), the court conceded that the facts before it were

procedurally distinguishable from those of *Petralia*, but it further reasoned as

follows in rejecting an argument that res judicata should be applied:

> * * * moreover, because a domestic-relations court has continuing jurisdiction over matters of child support (*see, e.g., Banks v. Banks*, Montgomery App. No. 19873, 2003-Ohio-5845, 2003 WL 22462030, ¶ 27), we conclude that the rationale of *Petralia* should be applied with the strictest of caution in order

to prevent a chilling effect on Ohio's legal mechanisms for periodic adjustments to child-support orders.

{¶27} Other courts have been critical of the application of the doctrine of res judicata in child support proceedings as well. *See Valley v. Armstrong*, 7th Dist. Mahoning No. 96-CA-195, 1999 WL 803561, *4 (relying on *Castle v. Castle* to reject an argument that the doctrine of res judicata divested the trial court of authority to review and subsequently change its prior judgment that reinstated child support for an adult disabled child when the underlying judgment was based, at least in part, on the trial court's opinion "that contract law should apply to any agreement by the parties to continue paying child support beyond [the date in question]"). *See also C.S. v. R.S.*, *supra*, at ¶ 15, 21 (refusing to apply the doctrine of res judicata to bar introduction of evidence regarding the corrected birthdate of a child who had been disabled since birth in a case involving a motion for modification of parental rights and responsibilities, albeit involving custody, not child support).

{¶28} Further, the Sixth District Court of Appeals recently opined as follows regarding the application of the doctrine of res judicata in a child support proceeding:

> "The application of principles of res judicata * * * is not mandatory in every case." *Smith v. Ohio Edison Co.*, 11th Dist. Trumbull No. 2014-T-0093, 2015-Ohio-4540, ¶ 9 (citations omitted). " 'The doctrine may be said to adhere in legal systems as a rule of justice. Hence the position has been taken that the

doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.' " *Id.*, quoting *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001). With respect to child support, where domestic relations courts have continuing jurisdiction, "res judicata should be applied with the 'strictest of caution in order to prevent a chilling effect on Ohio's legal mechanisms for periodic adjustments to child-support orders.' " *McNabb v. McNabb*, 12th Dist. Warren Nos. CA2012-06-056, CA2012-06-057, 2013-Ohio-2158, ¶ 22, quoting *Kiehborth v. Kiehborth*, 169 Ohio App.3d 308, 2006-Ohio-5529, ¶ 15 (5th Dist.).

*Peterson v. Johnson*, 6th Dist. Erie No. E-20-009, 2021-Ohio-3852, ¶ 28.

The *Peterson* court did not involve the added element of an adult child, allegedly disabled since minority. Nevertheless, in the view of the Sixth District, the application of the doctrine of res judicata is discretionary in a child support matter.

{¶29} Based upon the foregoing, we conclude that any application of the doctrine of res judicata to the facts presently before us should indeed be applied with the strictest of caution, considering the continuing jurisdiction of domestic relations courts over issues related to child support generally, as well as the public policy considerations that apply to the parental duty of support to disabled adult children. These public policy concerns very much exist in the present case. We further conclude that the application of the doctrine in the present case would not further the ends of fairness and justice, but would rather defeat the ends of justice and would potentially work an injustice to the child at issue. Thus, in light of the

fact there is no controlling authority stating that the doctrine of res judicata is clearly applicable or that it must be applied to the issues presently before us, coupled with the countervailing caselaw and statutory authority which clearly indicate a strong public policy in favor of enforcing the duty of parents to support their adult children that have been disabled since minority and are unable to maintain or support themselves, we cannot find that the trial court legally erred in declining to apply the doctrine of res judicata to preclude Appellee's motion for modification of child support.

{¶30} Our decision is further guided by the rationale espoused by the Supreme Court of Ohio in *Broz*, which states that "the main legal thread" running throughout the determination of the applicability of res judicata is the necessity of having a fair opportunity to fully litigate and to be heard in the due process sense. *See Broz, supra*, at ¶ 523. A review of the record before us indicates that Appellee never actually had a fair opportunity to be heard on the issue of whether or not Appellant had a continuing duty to support their son beyond the age of majority prior to the agreement reached between the parties in 2016. Thus, we find that the application of the doctrine of res judicata in the matter would not only work an injustice, it would violate public policy.

{¶31} Here, the record indicates that before filing the most recent motion that essentially sought to reinstate Appellant's child support obligation, Appellee

filed a previous motion to modify child support in 2016 which alleged the child at issue was disabled. That is the motion which ultimately led to the parties' prior agreement that child support would end upon "emancipation," which was the child's 19th birthday. Prior to reaching the agreement that settled the 2016 motion, the following exchange took place on the record between Appellant, Appellee, Appellee's counsel and the domestic relations magistrate:

MR. CLAY, II:     Braxton's actually going on 19.

MR. MEARAN:     He's disabled?

MR. CLAY, II:     Uh yes, I know that.

MR. MEARAN:     Well I'm, I'm just, is he in school?

MR. CLAY, II:     He has home schooling at his mother's house.

MR. MEARAN:     Okay, so he's 18,

MR. CLAY, II:     Yes.

MR. MEARAN:     And still in school?

MR. CLAY, II:     Yes.

MR. MEARAN:     You understand that if that's the case, there may be an obligation to continue to support him?

MR. CLAY, II:     I do understand that.

* * *

MR. MEARAN:     I, I have a question. We know that the child is 18 years old and normally a child 18, there

comes a time when your obligation to support the child terminates. However, if the child is 18 and still in school, the obligation would extend until age 19.

MR. CLAY, II:     Yes.

MR. MEARAN:     Now the question I have is, there's a, and we'd have to show the proof but if in fact the child is 19 and totally disabled, is that, does that obligation, I haven't had one of those where,

THE COURT:     I, I'm unware [sic] of any obligation for child support. Now if you find case law to say that but I'm unaware,

MR. MEARAN:     I, I'm talking about statutory.

THE COURT:     Right.

MR. MEARAN:     So once the child is,

THE COURT:     18 or if the child is still in school, 19 or graduates from high school.

MR. CLAY, II:     Right.

THE COURT:     Whichever comes first.

MR. MEARAN:     And how old is the child now?

MRS. CLAY:     He's 18.

MR. MEARAN:     When will he be 19?

MRS. CLAY:     July the 2nd.

THE COURT:     Okay so it would be July 2nd or if he graduates from school from whatever school he's in, if it's a home school.

MR. MEARAN:     So what happens,

MR. CLAY, II:     You're talking like two (2) to three (3) months then possibly.

MR. MEARAN:     Yeah, once the child becomes,

THE COURT:     In essence emancipated.

* * *

MR. CLAY, II:     I know it's different and ain't got nothing to do with it now but, if I paid one sum and I say I agree to be done with this and then you're gonna come back say [sic] well he's 19 and disabled now I'm gonna try to file another motion, you're gonna pay again.

MR. MEARAN:     Well I don't know of any law that,

MR. CLAY, II:     That's what you're getting at.

THE COURT:     No I, what I'm saying is I'm unaware of any statutory [sic] that I would have to continue you to pay child support once the child is over 19 years old.

MR. CLAY, II:      Or graduated you said?

THE COURT:     Right.

MR. CLAY, II:     See I mean if I knew it was that easy, I'd pay it right now and be done if I knew she wasn't gonna take me to court say [sic] now my son's disabled, I want you to continue to pay because he's disabled.

MR. MEARAN:    We, sir,

MR. CLAY, II:    Cause that's been brought up several times.

{¶32} Thereafter, the parties went off the record and entered into an agreement for Appellant to pay $191.54 for three months, for a total of $574.62 in child support before the child turned 19 years old on July 2, 2016.

{¶33} Clearly, upon entering the courtroom Appellee believed she was entitled to seek child support from Appellant for their adult son, assuming he was disabled, and Appellant believed he was obligated to pay such support. However, upon being advised by both her own counsel and the court that there was no statutory or other requirement for Appellant to continue paying child support beyond their son's 19th birthday, Appellee entered into an agreement to get whatever he was willing to pay. In fact, it appears that both of these parties entered into the agreement based upon a mistaken understanding of the law that was induced in part by counsel and in part by the court, as clearly R.C. 3119.86 had been enacted at the time of the hearing and *Castle v. Castle* had been decided by the Supreme Court of Ohio over 30 years prior. Under these circumstances, we conclude that the application of the doctrine of res judicata to forever bar Appellee's request for child support for her adult child, assuming that he is in fact disabled, would not serve the interests of justice and would violate the strong public policy which favors enforcing the obligation of parents to support their adult

disabled children.  As such, we find no merit to Appellant's argument that the trial court erred by ordering him to pay child support, at least to the extent that the argument is based upon the premise that the motion to modify child support was barred by the doctrine of res judicata.

{¶34} Our inquiry, however, does not end here.  Despite finding no error on the part of the trial court in declining to apply the doctrine of res judicata below, we nevertheless find that the trial court erred and abused its discretion in ordering child support.  As set forth above, in *Castle v. Castle*, the Supreme Court of Ohio recognized that the common law duty of support imposed on parents to support their children may continue beyond the age of majority in cases where a child is unable to support himself or herself because of physical or mental disabilities that were in existence before the reaching of the age of majority.  *See Castle, supra*, at paragraph one of the syllabus.  The *Castle* Court also held that domestic relations courts retain "jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or to modify support payments for a mentally or physically disabled child," provided that the child was "disabled before he or she attained the age of majority * * *."  *Id.* at paragraph two of the syllabus.  Further, as set forth above, R.C. 3119.86 is the codification of the common law duty of support recognized in *Castle* and provides that the duty of support to a child shall continue beyond the child's 18th birthday when "[t]he child is mentally or physically

disabled *and* is incapable of supporting or maintaining himself or herself."

(Emphasis added). R.C. 3119.86(A)(1)(a).

{¶35} In the present case, there is very little evidence in the record regarding the child at issue's disability, the extent of the disability, or whether the disability renders him unable to maintain or support himself. The parties were divorced while the child was still a minor, but neither the separation agreement nor the divorce decree contained any reference to the child being disabled. Subsequently, although Appellee filed a motion in 2016 seeking a modification of child support wherein she made an allegation that the child, who was still a minor at the time, was disabled, aside from Appellee's allegation in her motion there was no evidence admitted regarding the alleged disability. No evidentiary hearing was held on Appellee's prior motion and the parties ended up reaching an agreement off the record during a pre-trial hearing that simply required Appellant to pay child support until July 2, 2016, when the child emancipated. Neither the handwritten agreement of the parties nor the judgment entry filed thereafter by the trial court made any reference to the child having a disability. Although Appellant appears to have acknowledged on the record during a pretrial conference that the child was "disabled," there was absolutely no evidence offered regarding the nature of the disability, the extent of the disability, when the disability arose, whether the disability was permanent, whether the disability was physical or mental or both, or

whether the disability would ultimately affect the child's ability to maintain and provide for himself as an adult.

{¶36} Thereafter, although Appellee filed another motion to modify child support in August of 2018, no evidence was introduced regarding the child's alleged disability other than the affidavit of Appellee that was attached to Appellee's motion, as well as a judgment entry from the Probate Court of Pike County appointing Appellee as the child's guardian. Although the affidavit averred that the child "was born with cerebral palsy and severe developmental disabilities[]" and that he was "completely unable to take care of himself …" and the probate court entry stated the child was "incompetent by reason of profound/severe mental retardation/developmental disabilities due to cerebral palsy and is therefore incapable of taking proper care of himself and his property, and that a guardianship is necessary," Appellant did not stipulate to the child's disability during the hearing that was held on his motion to dismiss. Moreover, Appellant's counsel stated on the record during that hearing that he expected that the issue of the child's disability and the extent thereof would be the subject of a later hearing.

{¶37} There was no evidentiary hearing subsequently held, however, before the magistrate issued a decision impliedly overruling Appellant's motion to dismiss and finding that "it is likely the child will not emancipate in that he will

never be self-sufficient and able to care for himself." The magistrate further found that the "child has not and will not emancipate based upon his physical condition[,]" and that Appellant "has a continuing duty to support [the] child." Appellant filed objections and supplemental objections arguing that the trial court had wrongfully denied his motion to dismiss and alternatively, had erred in determining the child was disabled and unable to support himself without holding an evidentiary hearing on the issue of disability. Appellant argued that the court had put the proverbial "cart before the horse in the legal sense" and should, at a minimum, vacate the magistrate's findings regarding Appellant's "duty to support the child and finding that their son is disabled" and allow the parties to litigate those issues.

{¶38} Appellant's objections were overruled and the trial court ultimately approved and adopted the magistrate's decision. The absence of evidence in the record regarding the nature and extent of the child's disability leads us to conclude that the trial court erred and abused its discretion in summarily finding that the child, who was approximately 23 years old by that time, was disabled, had not emancipated, would never emancipate, and that Appellant would be required to pay child support for the benefit of the child for the remainder of the child's life as a result of the child's disability.

{¶39} In *Castle v. Castle*, the Court considered a second case that was part of the certified conflict. More specifically, the Court considered *Mullanney v. Mullanney*, 15 Ohio St.3d 279, 473 N.E.2d 803 (1984). In that case, although it recognized the duty of continuing support for adult disabled children that were so disabled before reaching the age of majority, the Court ultimately determined that the matter had to be remanded to the trial court for further proceedings to determine the nature and extent of the child at issue's disability. *Id.* at 281, 283 (finding that a remand was necessary for a factual determination as to whether adult child with hydrocephalus was disabled to the extent that she was incapable of maintaining herself). We believe that here, based upon the record before us, a reversal of the trial court's judgment and a remand is the proper course of action in this matter as well. Thus, we conclude the trial court erred and abused its discretion in ordering lifetime child support for the benefit of the child at issue in the absence of evidence in the record regarding the full nature and extent of the child's disability and whether that disability renders him unable to support and maintain himself, which is necessary to support such an award.

{¶40} Accordingly, we reverse the judgment of the trial court and remand this matter for further proceedings. The trial court is hereby instructed to hold an evidentiary hearing on the nature and extent of the child's alleged disability as well

as whether, as a result of the disability, the child is incapable of supporting and

maintaining himself.

**JUDGMENT REVERSED AND REMANDED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and the CAUSE IS REMANDED.  Appellee shall pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J., and Wilkin, J., concur in Judgment and Opinion.


For the Court,

_____
Jason P. Smith
Presiding Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**