[Cite as *Tolbert v. Tolbert*, 2022-Ohio-4482.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| ERNESTINE MARIE TOLBERT, | : | APPEAL NO. C-220220 |
| | | TRIAL NO. DR-1801920 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| SEAN V. TOLBERT, | : | |
| Defendant-Appellee. | : | |


Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: December 14, 2022


*Harry B. Plotnick*, for Plaintiff-Appellant,

*Trolinger Law Offices, LLC,* and *Christopher L. Trolinger*, for Defendant-Appellee.

**MYERS, Presiding Judge.**

{¶1}    In this appeal, plaintiff-appellant Ernestine Tolbert challenges the trial court's judgment overruling her objection to a magistrate's decision and adopting the magistrate's decision denying her motion to extend the child-support obligations of her former husband defendant-appellee Sean Tolbert.  Following our review of the record, we find no abuse of discretion on the part of the trial court, and we affirm its judgment.

*Factual and Procedural Background*

{¶2}    Ernestine and Sean were granted a decree of divorce in January of 2021. In that decree, Sean was required to pay child support for the parties' two children, Corey and Amber, until they reached 18 years of age and graduated from high school. At the time of the divorce, Corey and Amber were 17 and 16 years old respectively.

{¶3}    In March of 2021, Ernestine filed a motion to extend Sean's child-support obligations for Corey.[1]  The motion alleged that Sean's obligations should be extended beyond Corey attaining the age of 18 and graduating from high school because Corey suffered from a mental disability and would be unable to support himself upon graduating from high school.

{¶4}    At the hearing on her motion, Ernestine testified that Corey suffered two traumatic brain injuries as a child.  She explained that when he was a young child, he fell out of a second-story window, resulting in a broken arm and a hairline fracture to his skull.  At the age of 11 or 12, he suffered a shattered skull around his frontal lobe, requiring a plate to be put in his head, after he was struck by the head of a golf club.

---

[1] The motion also sought to find Sean in contempt for failing to meet his financial obligations, but that part of the motion was later dismissed by agreed entry.

Prior to these injuries, Corey was diagnosed with attention deficit hyperactivity disorder ("ADHD") but suffered no other significant behavioral problems. Following these injuries, Corey was diagnosed with Tourette's syndrome and post-traumatic stress disorder ("PTSD"). He also suffers from what Ernestine described as "behavioral explosions." She explained that when having an explosion, Corey becomes frustrated, loses his concentration, becomes angry, and then acts out. She stated that he has been physically violent at times.

{¶5} Ernestine testified that Corey graduated high school from Gamble Montessori, where he operated on an Individualized Education Plan ("IEP"). Because of his behavioral issues, Corey had an aide, or, as described by Ernestine, a "velcro" with him at all times at school. The purpose of the velcro was to help redirect Corey when he had a behavioral issue.

{¶6} In Ernestine's opinion, Corey was not capable of managing his own finances or taking his numerous medications regularly and attending medical appointments without her assistance. She testified that Corey worked approximately ten hours a week at Montgomery Inn carrying trays to waiters without the assistance of a velcro. He earned $10 an hour. She stated that Corey does not have a driver's license, and that she either drives him to work or he takes the bus.

{¶7} Ernestine acknowledged that Corey's IEP reflected that his IQ fell within the average range of general intellectual functioning, and that his ability to read and write was age-appropriate. She testified that Corey graduated from high school and expressed a desire to attend college. She recognized that his IEP reflected that he had "done an incredible job at performing at a very high level during his senior year, and his work submissions have been a model for other students in the class."

{¶8} Ernestine testified that she believed Corey was mentally disabled and incapable of supporting himself, managing his finances, or living on his own. She stated that Corey can feed himself if food is fixed and in the refrigerator, but that it would be difficult for him to go grocery shopping, buy food, refrigerate it, and prepare it himself.

{¶9} Corey testified[2] that he was 18 years old and had graduated from high school. He stated that he worked at Montgomery Inn carrying trays to tables or servers, and that he earned $10 an hour. Corey explained that he got to work by either using a bus card to take the bus or riding his bike. Corey stated that he would like to work more hours at Montgomery Inn, but that he does not have the time to do so because he has many chores to do around the house and he needs to look for scholarships and loans for college. He told the court that he previously worked as a ride operator at Kings Island.

{¶10} Corey testified that he has a temporary driver's license and that he has a bank account, although his mother pays his bills. He stated that he would like to learn how to manage his finances and believed that he was capable of doing so if taught. He also stated that he wanted to go to college, but that he first needed to obtain scholarships or loans. Corey testified that he was not a good cook but was able to use the microwave and follow directions. He felt that he could cook for himself if taught and stated that he would like to learn.

{¶11} Corey discussed his emotional issues, stating that he cannot calm down when he gets upset and that he has difficulty speaking and cannot focus when in that state. He testified that he is not ready to live on his own, but that he would like to do

---

[2] The courtroom recording system was not turned on when Corey was testifying, and his testimony was not recorded. Both parties submitted affidavits containing a summary of Corey's testimony.

so at some point in the future. Corey acknowledged that he sometimes forgets to take his medication, but believed he was capable of doing so regularly if he had a schedule and a "pill thing" with days of the week on it.

**{¶12}** Following the hearing on Ernestine's motion, a domestic-relations magistrate denied the motion. The magistrate found that the evidence established that Corey was capable of being self-sufficient and of supporting himself as an adult. Ernestine filed an objection to the magistrate's decision, arguing that she sustained her burden of establishing that Corey was incapable of being self-sufficient or of supporting himself in the future. The trial court overruled Ernestine's objection, stating:

> [T]he Court does not find any error of finding of fact or conclusion of law in the Magistrate's Decision. The Court agrees with the Magistrate's conclusion that Cory [sic] has a desire to live by himself and support himself and that he is capable of being self-sufficient. Further, this issue was never brought up in the original divorce proceedings and no medical evidence was provided at the trial or objection hearing. While Father may have a moral duty to financially assist his son, this Court does not find him to qualify as a "Castle child" and therefore cannot order such financial assistance.

**{¶13}** The court issued a decision overruling the objection and adopting the magistrate's decision. Ernestine now appeals, arguing in a single assignment of error that the trial court erred in finding that Corey was capable of being self-sufficient and supporting himself as an adult.

5

### Standard of Review

**{¶14}** We review the trial court's denial of a motion to extend child support for an abuse of discretion. *Clay v. Clay*, 2022-Ohio-1728, 190 N.E.3d 40, ¶ 11 (4th Dist.) (holding that the trial court abused its discretion, based on the absence of evidence in the record regarding the nature and extent of the child's disability, in finding that the child was disabled and in requiring appellant to pay child support for the remainder of the child's life); *see Hess v. Ugorec*, 9th Dist. Summit No. 29468, 2021-Ohio-189, ¶ 12 ("Generally, an abuse of discretion standard is the appropriate standard of review in matters concerning child support."); *Donohoo v. Donohoo*, 12th Dist. Clermont Nos. CA2011-11-080 and CA2011-11-081, 2012-Ohio-4105, ¶ 24 (the trial court possesses considerable discretion in child-support matters and its ruling in such matters should be reviewed for an abuse of discretion). An abuse of discretion indicates "more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Griffin*, 2020-Ohio-3707, 155 N.E.3d 1028, ¶ 38 (1st Dist.).

### R.C. 3119.86

**{¶15}** Typically, in the absence of a statutory provision providing otherwise, a parent's duty to support her or his child ends when the child reaches the age of majority. *Castle v. Castle*, 15 Ohio St.3d 279, 282, 473 N.E.2d 803 (1984). However, in *Castle,* the Supreme Court of Ohio recognized that parents have both a moral and legal duty to support mentally or physically disabled children, and it held that "[t]he common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter to continue beyond

the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Id.* at 283.

{¶16} The Ohio legislature codified the holding in *Castle* in R.C. 3119.86. This statute provides in relevant part that:

> The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
>
> (a) The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.
>
> (b) The child's parents have agreed to continue support beyond the child's eighteenth birthday pursuant to a separation agreement that was incorporated into a decree of divorce or dissolution.
>
> (c) The child continuously attends a recognized and accredited high school on a full-time basis on and after the child's eighteenth birthday.

R.C. 3119.86(A)(1). It is undisputed that only R.C. 3119.86(A)(1)(a) is applicable in this case.

{¶17} In support of her argument that Corey is not capable of being self-sufficient or of supporting himself, Ernestine directs this court to the evidence establishing that Corey has suffered two traumatic brain injuries, that he has significant behavioral problems and medical diagnoses including ADHD, Tourette's syndrome, and PTSD, that he required a velcro to be with him at all times at school, that he has a limited ability to meet his needs for food and lodging, and that he is not able to obtain employment that would result in a sufficient income to support himself.

{¶18} We cast no doubt on the validity of Ernestine's concerns. Corey's brain injuries have indisputably impacted his life. But following our review of the record, we cannot find that the trial court abused its discretion in determining that Corey was capable of being self-sufficient and of supporting himself.

{¶19} Despite Corey's behavioral issues and his struggles in school as a result of his brain injury, his IEP indicated that he did well in school and had an IQ in the average intellectual range. The record also establishes that he was able to maintain employment without the assistance of a velcro and to transport himself to and from that employment. At the time of the hearing, Corey did not earn enough money to support himself financially. But the record further indicated that Corey elected to work the minimal hours that he did because he had other responsibilities around the house, including performing chores and looking for scholarships and loans for college.

{¶20} And while the record indicated that Corey did not currently manage his own finances or take responsibility for grocery shopping and preparing his own food, it does not contain evidence that he is incapable of doing so. Corey testified that he would like to manage his own finances, and that he believed that if he was taught, he would be able to manage his finances, his medication and doctor's appointments, and learn to prepare food. Other than Ernestine's testimony and belief, the record contains no evidence, medical or otherwise, that Corey is mentally or physically disabled, or that he is incapable of being self-sufficient.

{¶21} The magistrate, whose decision was adopted by the trial court, had the ability to view both Corey and Ernestine while they were testifying and was in the best position to make credibility determinations regarding their testimony. *See State v.*

*James*, 1st Dist. Hamilton No. C-210597, 2022-Ohio-3019, ¶ 9; *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶22}** On this record, the trial court's determination that Corey was capable of being self-sufficient and of supporting himself was not arbitrary, unreasonable, or unconscionable. We hold that the trial court did not abuse its discretion in so concluding and in adopting the magistrate's decision denying Ernestine's motion to extend child support.

**{¶23}** Ernestine's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.