**KIEHBORTH, Appellee,**

v.

**KIEHBORTH, Appellant.**

[Cite as *Kiehborth v. Kiehborth,* 169 Ohio App.3d 308, 2006-Ohio-5529.]

Court of Appeals of Ohio,
Fifth District, Delaware County.

No. 05 CAF 08 0055.

Decided Oct. 23, 2006.

Amy Kiehborth, pro se.

Rich, Crites & Dittmer, D. Michael Crites, and James R. Gorry, for appellant.

WISE, Presiding Judge.

{¶ 1} Appellant, David R. Kiehborth, appeals the decision of the Court of Common Pleas, Delaware County, that ordered a postdecree modification of his child-support obligation. Appellee, Amy K. Kiehborth, is appellant's former spouse. The relevant facts leading to this appeal are as follows.

{¶ 2} Appellant and appellee were married on March 15, 1975. Five children were born as issue of the marriage, one of whom was emancipated at the time of the parties' divorce, and three of whom had become emancipated as of the time of the judgment entry under appeal. Appellee filed a complaint for divorce in the Delaware County Court of Common Pleas on July 16, 1998. Appellant filed a timely answer and counterclaim on July 21, 1998. Following litigation, a final divorce decree was filed on February 25, 2000. Among other things, the trial court found appellant's income for child-support purposes to be $31,200 per year, based on an extrapolation of his hourly wage as a framing carpenter.

{¶ 3} During the pendency of the divorce action, issues had arisen concerning the status of certain investment accounts. On March 20, 2000, appellee filed a Civ.R. 60(B) motion for relief from judgment in regard to the divorce decree. Following a weeklong hearing, the magistrate granted appellee's motion for relief and vacated the February 25, 2000 decree of divorce. Appellant filed objections to the magistrate's decision, which the trial court overruled by judgment entry filed March 29, 2002. On that same day, the trial court issued a new decree of divorce, incorporating the changes recommended by the magistrate. Appellant appealed therefrom. On April 15, 2003, upon review, we concluded that the trial court had erred in granting appellee's motion for relief from judgment. We thus vacated the March 29, 2002 decree of divorce and reinstated the original February 25, 2000 decree. *Kiehborth v. Kiehborth,* Delaware App. No. 02CAF04017, 2003-Ohio-1934, 2003 WL 1889482.

{¶ 4} On April 29, 2003, appellant filed a postdecree motion to modify child support, based on the emancipation of Chelsey and Leah.[1] The trial court, after conducting hearings on August 11 and August 25, 2003, issued a judgment entry on July 21, 2005, finding appellant to be voluntarily underemployed and calculating his annual income for purposes of the support guidelines at $118,025. The court thus ordered appellant's child-support obligation to be set as follows:

{¶ 5} From August 8, 2002, until June 7, 2003 (Leah's emancipation), $974.17 per month.

{¶ 6} From June 7, 2003, until June 14, 2005 (Lydia's emancipation), $1,305.50 per month.

{¶ 7} From June 14, 2005, forward, $889.83 per month.

{¶ 8} Appellant filed a notice of appeal on August 1, 2005. He raises the following five assignments of error:

{¶ 9} "I. The common pleas [sic] erred in allowing appellee to relitigate the issue of appellant's 'potential income' and 'imputed income' for the purposes of determining child support under R.C. 3319.79[sic] and the doctrine of res judicata.

{¶ 10} "II. The common pleas [sic] erred in imputing $68,411 in potential income to appellant as a construction manager.

{¶ 11} "III. The common pleas [sic] erred in imputing the attorneys' fees paid by appellant's parents to attorneys they retained for appellant as income to appellant.

{¶ 12} "IV. The common pleas [sic] erred in imputing $14,000 in potential income to appellant because appellant's parents allow him and two of the children to reside in a house owned by appellant's parents.

{¶ 13} "V. The common pleas [sic] erred in imputing $9,715 in potential income to appellant because his parents provide him a truck and cell phone."

I

{¶ 14} In his first assignment of error, appellant contends that the trial court erred in allowing litigation on the issue of his potential or imputed income for purposes of computing child support, on the basis that the litigation violated the doctrine of res judicata. We disagree.

{¶ 15} In support of his argument, appellant cites *Petralia v. Petralia,* Lake App. No. 2002–L–047, 2003-Ohio-3867, 2003 WL 21688251, in which the

---

1. Leah moved in with appellant in 2002 and became emancipated on June 7, 2003.

Eleventh District Court of appeals concluded that the doctrine of res judicata would prevent an obligor from relitigating the issue of his voluntary underemployment. Id. at ¶ 15. However, the obligor there had first filed a motion to modify support in August 1999 based on a significant decrease in income, which resulted in a judgment entry lowering his support obligation. Id. at ¶ 3. In September and October 2000, the obligor filed another motion to modify support, but used the same arguments as in the motion of August 1999. Id. at ¶ 5. We therefore find *Petralia* procedurally distinguishable from the case sub judice; moreover, because a domestic-relations court has continuing jurisdiction over matters of child support (see, e.g., *Banks v. Banks,* Montgomery App. No. 19873, 2003-Ohio-5845, 2003 WL 22462030, ¶ 27), we conclude that the rationale of *Petralia* should be applied with the strictest of caution in order to prevent a chilling effect on Ohio's legal mechanisms for periodic adjustments to child-support orders.

{¶ 16} Furthermore, R.C. 3119.79 states: "(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order *in accordance with the schedule and the applicable worksheet* through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." (Emphasis added.)

{¶ 17} The mandatory child-support worksheet, found in R.C. 3119.022 and 3119.023, includes space for the assessment of each parent's income, which is defined, for a parent who is unemployed or underemployed, as "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b). Included in the definition of "potential income" is imputed income as determined by a court or child-support enforcement agency. R.C. 3119.01(C)(11).

{¶ 18} Appellant presently charges that appellee "has not claimed and certainly has not proven that a single relevant fact or circumstance has changed since the original determination was made in February 2000" in regard to his income factors, despite the fact that he opened the door to modification by filing the motion. Upon review of the above statutory guidance, we find that a court's review of the issue of potential or imputed income is an integral part of the child-support-modification process, and the trial court's decision to analyze it in the

case sub judice did not constitute reversible error and did not violate the doctrine of res judicata as a matter of law.

{¶ 19} Appellant's first assignment of error is overruled.

## II

{¶ 20} In his second assignment of error, appellant argues that the trial court erred in imputing annual income to him of $68,411 for the occupation of construction manager. We disagree.

{¶ 21} In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the Ohio Supreme Court determined that the abuse-of-discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Furthermore, as an appellate court, we are not the trier of facts. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911. Accordingly, a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 22} Under R.C. 3119.01(C)(11), "potential income" is defined to include the following for a parent who the court determines is voluntarily unemployed or voluntarily underemployed:

{¶ 23} "(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

{¶ 24} "(i) The parent's prior employment experience;

{¶ 25} "(ii) The parent's education;

{¶ 26} "(iii) The parent's physical and mental disabilities, if any;

{¶ 27} "(iv) The availability of employment in the geographic area in which the parent resides;

{¶ 28} "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

{¶ 29} "(vi) The parent's special skills and training;

{¶ 30} "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

{¶ 31} "(viii) The age and special needs of the child for whom child support is being calculated under this section;

{¶ 32} "(ix) The parent's increased earning capacity because of experience;

{¶ 33} "(x) Any other relevant factor."

{¶ 34} Appellant primarily relies on *Doan v. Doan* (Oct. 2, 1997), Hamilton App. No. C–960932, 1997 WL 602881, in which the First District Court of Appeals found that a trial court had abused its discretion in finding an obligor, a practicing attorney by trade, voluntarily underemployed and by imputing income to him in reliance on the testimony of the obligee's vocational expert, Dr. Howard Caston. The *Doan* court stated as follows:

{¶ 35} "At trial, over appellant's [obligor's] objection, Caston testified that male attorneys with more than twenty years of practice earn an average salary of $75,000 per year. Caston stated that for a male attorney with twenty-two years experience in a solo practice, his opinion of salary range from low to high would be $57,500 to $75,000 per year. Caston further stated that he did not conduct an interview of appellant, as he did appellee, and that he does not know appellant's background in terms of trauma or stressors that might relate to his earning potential. Caston also stated that the attorneys with whom he compared appellant worked a full day and were devoted to the practice of law. Under the circumstances, we find that the trial court improperly permitted Caston to testify regarding appellant's earning potential. Appellant was not informed that Caston would be testifying with respect to his earning potential prior to trial, as required by the civil rules. See Civ.R. 26(B)(4)(b). Caston had never met with appellant and did not have specific information regarding appellant in order to assess appellant's vocational ability. Further, we find that Caston's testimony regarding the average annual salaries of attorneys practicing with twenty years experience was too general in nature to support the trial court's imputation of income to appellant based upon that testimony." Id. at 9–10.

{¶ 36} However, we find the reasoning of *Doan* on the issue of vocational assessments unduly restrictive under R.C. 3119.01(C)(11). In *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus, the Ohio Supreme Court held that "[w]hether a parent is 'voluntarily underemployed' * * * and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case." Similarly, what evidence a trial court considers in determining potential income is within its discretion. *Long v. Long,* 162 Ohio App.3d 422, 428, 2005-Ohio-4052, 833 N.E.2d 809.

{¶ 37} In the case sub judice, the trial court heard testimony from appellee's expert witness, Carl Hartung, a vocational rehabilitation consultant, who complet-

ed an employment analysis on appellant on August 6, 2003. Based on his assessment, Hartung opined that a person employed as a construction manager in the Columbus metropolitan area should earn an average salary of $68,411 per year. In addition, Ty Quinn, a private home builder, testified that appellant is a skilled builder and expressed doubt that he would have problems obtaining new customers. Appellant has many years of experience in the home-construction business, and for a time in the late 1980s and 1990s, he owned his own construction company. In 1998, after his company went out of business, appellant began working at an annual salary of just $25,000 for W.P. Baker and Sons, a construction company owned by his father, Brian Kiehborth. During his testimony, Brian described appellant as a "good construction manager" who is competent at bidding on projects.

{¶ 38} Upon review, we find that the record provides competent, credible evidence to support the trial court's finding of $68,411 as appellant's imputed income, and that finding did not constitute an abuse of discretion. Appellant's second assignment of error is overruled.

### III

{¶ 39} In his third assignment of error, appellant argues that the trial court erred in finding the sum of $25,811, based on attorney fees paid by appellant's parents during the divorce, to be imputed income for purposes of computing child support. We agree.

{¶ 40} The trial court arrived at a figure of $25,811 by taking the total amount of attorney fees paid by appellant's parents, $143,241.40, and averaging this figure over a four-year period, arriving at $35,810.35. The court then subtracted $10,000, based on a provision in the 2000 divorce decree that the first $10,000 of any "contributions" made by appellant's parents per year would be excluded from imputed income. The balance was then rounded to the next highest dollar to arrive at the amount of $25,811.

{¶ 41} R.C. 3119.01(C)(7)(e) and (C)(8) exclude from gross income "nonrecurring or unsustainable income or cash flow items," which are defined as that which the parent "receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." In the case sub judice, notwithstanding the paucity of evidence that appellant obtained the benefit of the attorney fees as a form of income, the court spread out the fees over four years in apparent reference to the approximate length of the proceedings in the original divorce action. Upon review, we find that the court's method of forcing the paid attorney fees into a form of gross income under R.C. 3119.01 in these circumstances was arbitrary and unreasonable. Accordingly, we

find merit in appellant's argument. The trial court is thus directed to recalculate child support without the attorney-fee income.

{¶ 42} Appellant's third assignment of error is sustained.

## IV and V

{¶ 43} In his fourth assignment of error, appellant argues that the trial court erred in treating as income the annual mortgage payments of $14,088 paid by appellant's parents for the home of appellant and his present wife. In his fifth assignment of error, appellant contends that the trial court erred in treating as income the $9,715 annual value of the use of a pickup truck and a cell phone furnished by appellant's parents. We disagree on both counts.

{¶ 44} In support of its decision to include the mortgage payments as income, the trial court relied on *Merkel v. Merkel* (1988), 51 Ohio App.3d 110, 554 N.E.2d 1346, in which the Second District Court of Appeals addressed the issue of a housing allowance included as part of the pay package for an obligor serving in the United States Air Force.[2] In concluding that the trial court had erred by not including the obligor's housing allowance as a factor in determining his gross income, the court looked at former C.P.Sup.R. 75(C)(1)(c), which stated: "Expense reimbursements or in-kind payments received by a parent from self-employment, operation of a business or rents should be counted as income if they are significant and reduce personal living expenses. Such payments might include a company car, free housing, reimbursed meals, or any other benefits." The court recognized that the airman was not self-employed but nonetheless found the section of the rule analogous to the case. The court concluded: "It is worthy to note that the section specifically states that free housing is to be considered as part of gross income. Under the facts of this case, we find that the receipt of free housing is a significant benefit for the [obligor] and that it would be inequitable for the trial court not to consider such a factor in determining his total gross income." Id. at 112, 554 N.E.2d 1346.

{¶ 45} In the case sub judice, appellant points out that under the current statute, in-kind payments are likewise specifically mentioned only in a subsection addressing self-generated income (R.C. 3119.01(C)(13)). However, in light of the expansive view of gross income for child-support purposes otherwise espoused in the Revised Code, we are unable to conclude that the trial court abused its discretion in treating as income the value of mortgage payments, truck payments, and cell phone costs provided by appellant's employer/parents. We further find no merit in appellant's claim that the mortgage payments should not be counted

---

2. R.C. 3119.01(C)(7) presently provides much more specific guidance concerning military pay than Ohio law did at the time *Merkel* was decided.

as income, because the parties' children were the intended beneficiaries of the house.

{¶ 46} Appellant's fourth and fifth assignments of error are therefore overruled.

{¶ 47} For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is hereby affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

FARMER, J., concurs.

HOFFMAN, J., concurs in part and dissents in part.

HOFFMAN, J., concurring in part and dissenting in part.

{¶ 48} I concur in the majority's analysis and disposition of appellant's first, second, and third assignments of error. However, I respectfully dissent from the majority's disposition of appellant's fourth and fifth assignments of error.

{¶ 49} I do agree in principle with the majority's legal conclusion that the mortgage payments, truck payments, and cell phone costs paid by appellant's parents may be counted as imputed income to appellant. Those sums could then be added to appellant's salary, as an employee of his father's business, in arriving at his imputed income. However, I believe it is an abuse of discretion in this case to add those sums to the imputed income as established though appellee's vocational expert, which we have already approved in our discussion of appellant's second assignment of error. To do so overinflates appellant's imputed income. I believe that appellant's imputed income should either be that as determined by appellee's vocational expert or appellant's actual income from his father's construction company, plus the mortgage, truck, and cell phone payments, but not both.